**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF KANSAS**

|   |   |   |
|---|---|---|
| MARK LARKIN and CAROLINE LARKIN, | ) | |
| | ) | |
| Plaintiff, | ) | **CIVIL ACTION** |
| | ) | |
| v. | ) | No. 15-1151-MLB |
| | ) | |
| BANK OF AMERICA, N.A., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

This case comes before the court on defendant's motion to refer this case to the bankruptcy court (Doc. 9) and motion to dismiss (Doc. 11). The motions have been fully briefed and are ripe for decision. (Docs. 10, 12, 16, 17, 20, 21).

**I. Facts and Procedural History**

Plaintiffs reside in Wichita, Kansas, and obtained a mortgage for their home in February 2007. In 2009, BAC Home Loans Servicing was the servicer of the loan. In 2011, defendant BOA merged with BAC.[1]

In 2009, plaintiffs fell behind on their payments and sought a loan modification with BOA (first modification). Plaintiffs provided BOA with all the information it requested and followed instructions they received by BOA. BOA, however, never modified their loan. On December 30, 2009, plaintiffs received a second modification

---

[1] The ownership of the actual loan, however, fluctuates. On April 1, 2010, defendant Bank of America (BOA) became the owner of the loan upon a transfer from the original owner. As of February 2011, the owner of the loan was identified as "CIG-HFI 1st Lien EPBO" on a monthly statement received by plaintiffs. (Doc. 1 at 2).

offer. The terms were different from the first modification. Under the terms, plaintiffs principal balance would be set at $276,838.81, and the monthly payment would be $1914.26 with an interest rate of 4.5%. On January 12, 2010, plaintiffs complied with the requirements for acceptance of the second modification offer. Plaintiffs continued to make payments to BOA. BOA did not apply the monthly payments and continued to send statements which did not comply with the second modification.

Between April and September 2010, BOA sent plaintiffs four Notices of Intent to Accelerate, each of which set forth different amounts that BOA represented were due and owing on the loan. Each notice represented that plaintiffs failed to make payments and were in default. Plaintiffs continually inquired and requested information about the status of the second modification, but they were told that the modification was being processed and that they should "not worry." (Doc. 1 at 9).

On September 29, 2010, plaintiffs filed for Chapter 13 bankruptcy. Plaintiffs listed the loan payment in their Chapter 13 bankruptcy plan as $1,914.26. On October 1, BOA sent plaintiffs a letter representing that it would again consider them for a loan modification upon their submission of a signed "Request for Modification and Affidavit" ("RMA"). Again, plaintiffs complied with BOA's request and submitted the documents.

On December 13, BOA filed a proof of claim with the bankruptcy court representing the loan balance was $270,021.46 and that the monthly payment was $2,137.74. Plaintiffs objected to BOA's proof of claim on the basis that it did not comply with the second

-2-

modification. BOA responded with an acknowledgment that the loan terms were modified by the second modification. Plaintiffs continued to make payments to the Chapter 13 Trustee that included the $1,914.26 monthly payment. Although the trustee disbursed $10,743.30 to BOA, there is no indication that BOA applied the funds to the loan.

On April 27, 2011, plaintiffs' attorney received a letter from BOA which stated that it was willing to consider plaintiffs for another loan modification. However, BOA refused to speak with plaintiffs about a modification due to their pending bankruptcy. On January 25, 2012, plaintiffs' amended plan was approved by the bankruptcy court. The amended plan adopted the terms of the second modification. In spite of the amended plan, BOA refused to accept plaintiffs payments from February 2012 through May 2015. BOA continued to send monthly statements reflecting a monthly payment due of $2,337.42 instead of $1914.26, the amount of the second modification.

On November 7, 2014, BOA sent plaintiffs a letter representing that BOA had entered in a settlement with the Department of Justice. Pursuant to the terms, a new loan assistance program was established and plaintiffs were eligible for another loan modification (final modification). BOA claimed that the current outstanding balance on the loan was $345,656.20, an amount that was vastly higher than any amount represented by the monthly statements plaintiffs received.

The final modification reduced the principal to $161,000, set the interest rate at 2.0%, and reduced the monthly payment to $1,183.33. On February 25, 2015, plaintiffs executed the final modification. Plaintiffs' bankruptcy action is still pending.

On May 14, 2015, plaintiffs filed this action against BOA alleging that it breached the second modification and violated the Kansas Consumer Protection Act (KCPA) and the Fair Debt Collections Practices Act (FDCPA). BOA moved to refer this action to the bankruptcy court on the basis that it arises out of or is related to plaintiffs' bankruptcy case. In the alternative, BOA moves to dismiss plaintiffs' complaint.

**II.  Analysis**

    **A.  Motion to Refer**

In support of its motion to refer this proceeding to bankruptcy court, BOA states that plaintiffs are currently debtors in a Chapter 13 proceeding in a bankruptcy court for this district, In re: Larkin, No. 10-13339 (Bankr. D. Kan., J. Nugent). BOA contends that plaintiffs' present action relates to the debtor-creditor relationship between the parties and that, in the interest of judicial economy, this action should be consolidated with the proceeding before the bankruptcy court.

The general rule in this district is that all proceedings under, and related to, Title 11 of the United States Code are referred to district bankruptcy judges. D. Kan. Rule 83.8.5. When a case is referred, 28 U.S.C. § 157(b) enables bankruptcy courts to "hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11," and to hear, enter interlocutory orders, and submit findings of fact and conclusions of law with respect to non-core proceedings that are related to a bankruptcy case.

"Core proceedings are proceedings which have no existence

-4-

outside of bankruptcy." In re Gardner, 913 F.2d 1515, 1518 (10th Cir. 1990). "Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." Id. Plaintiffs' claims do not depend on bankruptcy law for their existence. Rather, they are based on state law and federal law concerning debt collectors. Therefore, plaintiffs' claims are not core proceedings.

Plaintiffs' claims, however, may be referred to the bankruptcy court if they are related to the bankruptcy case. "Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court." Id. The question becomes whether the "outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." Id. The proceeding is "related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate." Id.

Plaintiffs' claims concern the loan which is subject to the amended plan in the bankruptcy proceeding. Plaintiffs allege that due to BOA actions during the bankruptcy proceeding, BOA caused the loan balance to inflate. Plaintiffs assert that this breach of the second modification, which is only memorialized in the amended plan, resulted in an unfavorable final modification. Therefore, if plaintiffs are successful, the result would alter the debtor's liabilities to BOA. With respect to plaintiffs' KCPA and FDCPA claims, those arise solely from BOA's conduct during the bankruptcy proceedings. Plaintiffs contend that BOA's statements sent during the bankruptcy proceedings

-5-

violate those statutes because BOA was not in compliance with the amended plan and the bankruptcy court's order. The court finds that the bankruptcy court is in a better position to determine whether BOA's conduct violated the bankruptcy court order and whether plaintiffs' claim state a valid cause of action.[2]

Accordingly, the court finds that this action is related to the bankruptcy proceeding. BOA's motion to refer is granted.

## III.  Conclusion

BOA's motion to refer is granted. (Doc. 9). The clerk is instructed to refer this case to the bankruptcy court.

IT IS SO ORDERED.

Dated this ___9th___ day of September 2015, at Wichita, Kansas.

                                            ___s/ Monti Belot___
                                            Monti L. Belot
                                            UNITED STATES DISTRICT JUDGE

---

[2] Plaintiffs contend that this case should not be referred to the bankruptcy court because they seek a jury trial. Pursuant to § 157(e) the bankruptcy court may conduct a jury trial if all parties consent. Plaintiffs note that they have not consented to a jury trial by the bankruptcy court. (Doc. 17 at 4). Plaintiffs do not suggest that they would <u>not</u> consent to a jury trial in bankruptcy court, however. The bankruptcy judge has intimate familiarity with the parties and the law applicable in this case. A refusal to consent to a jury trial with the bankruptcy judge presiding would be perplexing, to say the least.